■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RICHARD PAGLIARULO, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered February 10, 1972, convicting him of feloniously possessing a dangerous weapon under the third count of the indictment, upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court, entered March 4, 1971, which denied defendant's motion to suppress evidence. Judgment and order reversed, on the law and the facts, motion to suppress granted, and third count of indictment dismissed. Defendant contends only that the trial court should have granted his motion to suppress as evidence a loaded revolver found under the driver's seat of an automobile in which he had been a passenger. The testimony at the suppression hearing disclosed the following: At 9:50 P.M. on May 6, 1969 two police officers on motor patrol were approached by a man (the complainant) who told them he had just been held up and robbed of $900 by two males in a late model black Thunderbird, the license number of which began with "LS" or "1Z". The complainant furnished no description at that time of the perpetrators' height, weight, color or hair, but said they were armed and had a five-year-old child with them in the car. The policemen cruised the area with the complainant searching for the vehicle and the perpetrators. They stopped two automobiles and asked for the vehicle registrations and operators' licenses, which were promptly produced. They made no arrests, searched no automobile, and asked no occupants to leave their cars. The complainant was then taken to the precinct stationhouse for interview by detectives; and the officers resumed patrol. At 11:50 P.M. they saw a late-model black Thunderbird parked at a curb about a mile from the reported scene of the crime. Two men were in the car, one of whom (defendant) was sitting in the front passenger seat. The officers parked behind the car and, as they did so, the men got out and walked straight ahead somewhat hurriedly. The officers left the patrol car, approached the men and told them to stop. The men were about 20 feet from the Thunderbird and turned around offering no resistance. They all returned to the Thunderbird and, upon request, defendant produced identification and his companion produced an operator's license and the owner's registration. While one officer was questioning the men, the other officer opened an unlocked closed door of the Thunderbird and entered the car. He examined the interior by flashlight, saw nothing, and then put his hand under the driver's seat where he felt a metal object. He removed it and saw it was a revolver, whereupon he arrested both men for possessing it. He then searched their persons but found no other weapon or any bank checks. He had no warrant to search the car or the men, who had not consented to his search of the car. Upon this testimony the trial court denied the suppression motion, hold-

ing that the police officers had ample cause to stop the car and that there was probable cause for the search and seizure. We consider this error. The testimony established that the officers did .not stop the car — it was already parked at the curb when they first saw it. The search of the car was not incident to a lawful arrest, since no arrest was made until after the search and then only because the search disclosed the revolver. The arrest was made solely for possessing a dangerous weapon; and the arresting officer said he had no intention of making an arrest for the robbery without an identification by the complainant. In our opinion the facts of this case fall short of showing probable cause for arresting defendant and his companion for robbery. The search of the car was therefore not incident to a lawful arrest, and the fruit of a search cannot be the sole justification of an arrest; nor may the search of the car be upheld as a protective search to remove any weapons that the mem might seek to use to resist arrest or effect their escape. Such a search permits the arresting officer to search "the arrestee's person and the area 'within his immediate control' — construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence" (*Chimel* v. *California,* 395 U. S. 752, 763). Here the two men offered no resistance when the police stopped them for questioning and, so far as the record discloses, their persons were searched after, not before, the revolver was found in the car. It does not appear that the officers were apprehensive of danger, since there is no evidence that they "frisked" the men before the car was searched. Some authority exists for the proposition that if there is a criminal suspect close to an automobile so that he might get a weapon from it or destroy evidence within it, the police may make a search of appropriate limited scope (see *Coolidge* v. *New Hampshire,* 403 U. S. 443, 461 [n. 18]). Here the suspects were standing on the sidewalk outside the Thunderbird, which was parked at a curb with its doors closed but unlocked. The revolver was under the driver's seat, completely hidden from view, and the suspects were separated from it by the closed door and the interior width of the car. In our opinion the revolver was not within the "grabbable area" into which the suspects might reach to remove it; and hence the search of the car was not a protective one. Upon the record presented we find no justification for the search of the car; and the motion to suppress should have been granted. Since there is no evidence of defendant's guilt other than the revolver itself, the judgment should be reversed, the motion to suppress granted and the third count of the indictment dismissed. Rabin, P. J., Hopkins, Munder, Martuscello and Shapiro, JJ., concur.