Jasen, J.
The defendant was arrested and taken into custody for criminal trespass without a warrant. The contents of an attaché case in his possession, seized during a contemporaneous search of his person, furnish the basis for this prosecution for criminally possessing stolen property. A motion to suppress the contents of the attaché case was denied, after which the defendant pleaded guilty. The Appellate Division reversed and granted the motion. We must decide whether the warrantless search and seizure were constitutionally reasonable. We hold that they were and, accordingly, reverse the order of the Appellate Division.
The facts, as accepted by the Appellate Division on appeal to that court, reveal that on May 31, 1969, at about 5:00 p.m., two police officers on foot patrol entered a parking garage at 25 West 39th Street, Manhattan. The garage, which the officers knew had been vandalized numerous times in the past, was closed and had a locked chain across the entranceway. The defendant was seated in a parked Austin Healy sports car which one of the officers recognized as belonging to a local restaurateur, Sal Cirella. Asked what he was doing in the car, the defendant replied that he was waiting for ‘ ‘ Frank ’, and had his permission to be there. In Ms possession was a closed black attaché case. The defendant, carrying the attaché case, then accompanied the officers to Cirella’s restaurant at 39th Street and Fifth Avenue. Cirella denied having given the defendant permission to be in the car. He then accompanied the officers and the defendant back to the parking garage. The defendant was still carrying the attaché case. Cirella determined that nothing was missing from the vehicle and drove it away. The defend *353 ant, not having explained his presence on the premises, was then arrested for criminal trespass of the garage, handcuffed and searched. In the attaché case, which defendant had been holding throughout the investigation, were found 42 checks, two airline tickets and various credit cards, all made out to different named persons.
The Appellate Division, relying on People v. Marsh (20 N Y 2d 98) and People v. Adams (32 N Y 2d 451), reasoned that the warrantless search of the attaché case could not be justified in the interest of protecting the officers’ safety, nor by a need to secure fruits or instrumentalities of the crime.
Reliance on Marsh and Adams is, however, misplaced. Those cases dealt with the right to search incident to a custodial arrest for an offense arising under the Vehicle and Traffic Law. In Marsh, reasoning from the legislative design as well as the Federal and State constitutional guarantees against unreasonable searches and seizures, we said that without more a mere custodial arrest for a traffic offense will not sustain a contemporaneous search of the person (20 N Y 2d, at pp. 101-102). Adams is to the same effect (32 N Y 2d, at p. 455). However, under the Federal Constitution, as subsequently interpreted by the Supreme Court in United States v. Robinson (414 U. S. 218), the right to search, incident to a valid custodial arrest, is, of course, substantially broader. Hence, insofar as the holdings of Marsh and Adams are predicated on the Federal Constitution, they must be read with the Supreme Court’s decision in the Robinson case.
Clearly, this is not a traffic matter and, hence, the search incident limitation recognized in Marsh and Adams for traffic related arrests does not apply. Here, the defendant was arrested for criminal trespass — a violation or a misdemeanor (Penal Law, former §§ 140.05, 140.10, 140.15) — and the contemporaneous search of his person derives its justification from the fact of the custodial arrest.* While based upon the need to disarm and to discover or preserve evidence, the authority to search incident to a lawful custodial arrest should hot turn on what a court later determines was the probability that weapons or *354 evidence would be found in the defendant’s possession. The lawful custodial arrest being a constitutionally reasonable intrusion upon the defendant’s privacy, the search incident requires no additional justification. (United States v. Robinson, supra, at p. 235.) The authority to search being clear, it includes those personal effects of the arrestee that are “ ready to hand ”. (Amer. Law Institute, Model Code of Pre-Arraignment Procedure, Official Draft No. 1 [1972], § SS230.3, subd. [1]; Chimel v. California, 395 U. S. 752, 762-763; cf. People v. Moore, 32 N Y 2d 67 [lady’s handbag].) While in this case a lesser instrusion was possible — the officers merely could have seized the attache case from the defendant without searching it — we know of no such constitutional restriction upon the traditional right to search incident to a valid custodial arrest. (See People v. Perel, 34 N Y 2d 462, 466-467; Weeks v. United States, 232 U. S. 383, 392; cf. People v. Pugach, 15 N Y 2d 65; Taylor, Two Studies in Constitutional Interpretation, pp. 44-45.)
Accordingly, the order of the Appellate Division should be reversed, and the action remitted to that court for a determination of the facts. (CPL 470.40, subd. 2, par. [b]; 470.25, subd. 2, par. [d].)

 The Appellate Division assumed, as do we, that the arrest was predicated on probable cause.